**\*\*NOT FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DR. MAJA J. BUJ, | Civil Action No.: 17-5012 (CCC) |
| Plaintiff, | **OPINION and ORDER** |
| v. |  |
| PSYCHIATRY RESIDENCY TRAINING., *et al.*, |  |
| Defendants. |  |

**CECCHI**, **District Judge.**

This matter comes before the Court on the motion for summary judgment filed by

defendant Rutgers School of Medicine ("Rutgers"). ECF No. 84. *Pro se* plaintiff Dr. Maja J. Buj

("Plaintiff") filed two briefs in opposition (ECF Nos. 88 and 96) and Rutgers replied in support of

the motion (ECF Nos. 94 and 98). The Court decides this matter without oral argument pursuant

to Rule 78(b) of the Federal Rules of Civil Procedure. It appearing that:

1.      On July 7, 2017 Plaintiff filed a complaint (the "Complaint") in the instant matter.

ECF No. 1.

2.      Plaintiff's Complaint brings claims for employment discrimination under Title VII

of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e–2000e17), the Age Discrimination in

Employment Act of 1967 (29 U.S.C. §§ 621–634) ("ADEA"), and the Americans with Disabilities

Act of 1990 (42 U.S.C. §§ 12112–12117) ("ADA"). Id. at 5. The Complaint also refers to a state

law claim under "NJ ADAAA," which the court construes as a claim for disability discrimination

under the New Jersey Law Against Discrimination ("N.J.S.A. 10:5-1 et seq.") ("NJLAD") [1] as that

---

[1] Given Plaintiff is proceeding as a *pro se* litigant in this matter, the Court construes the
Complaint liberally here and attempts to view Plaintiff's reference to the "NJ ADAAA" as a

is the appropriate vehicle to bring a New Jersey state law claim for disability discrimination. Id. The Complaint initially named as Defendants: Psychiatry Residency Training, Zeynep Ozenci, Tshering Bhutia, Rashi Aggarwal, Wejid Hussain, Najeeb Hussain, and Rutgers. ECF No. 1 at 2–3. Currently, Psychiatry Residency Training and Rutgers remain as named Defendants in this matter. Plaintiff alleges that she was denied a position in Rutgers' residency psychiatry program (the "Residency Program") when she applied for a position listed online by Rutgers in May 2016 and when she applied through the National Residency Match Program ("Match Program") in the fall of 2016, despite having the requisite qualifications, because of her age, national origin, and physical disabilities. Id. at 6. Plaintiff alleges that she was born in 1960, she is a native of the "[f]ormer Yugoslavia, Belgrade, and Croatia," that she has "European non Indian and Non Islamic Ancestors," and that she suffers from disabilities stemming from arthritis, spine issues, and post-traumatic stress disorder. Id. at 6–7; ECF No. 1-1 at 9, 11. Plaintiff claims that she was more qualified than other individuals who were given interviews and positions with the Residency Program. Id at 7. She also contends she was told by Dr. Zeynep Ozenci (a participant in the Residency Program with no input in hiring process) at a Transgender Health Conference that her status as an "old graduate" would be held against her. Id. at 7; ECF No. 85-1 at 7.

3.      Following a settlement conference, by stipulation and order the parties agreed that all individually named defendants (Zeynep Ozenci, Tshering Bhutia, Rashi Aggarwal, Wejid

---

recognized cause of action under the NJLAD. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotations omitted) ("A document filed *pro se* is to be liberally construed, and a *pro* se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." To the extent Plaintiff's "NJ ADAAA" claim refers to the Americans with Disabilities Act Amendments Act, such claim is considered in this Opinion in conjunction with Plaintiff's ADA claim. *Kennedy v. Gray*, 83 F. Supp. 3d 385, 390 n.4 (D.D.C. 2015) ("The ADA Amendments Act of 2008 ('ADAAA') does not provide a separate cause of action from the ADA."); *Snider v. U.S. Steel–Fairfield Works Med. Dep't*, No. 12-03508, 2013 WL 1278973, at *3 (N.D. Ala. Mar. 26, 2013) ("The ADAAA merely broadens the scope of protection available to plaintiffs under the ADA by redefining particular terms . . . the proper cause of action still exists under the ADA."), *aff'd*, 591 F. App'x. 908 (11th Cir. 2015).

Hussain, and Najeeb Hussain) were to be dismissed from this matter and that all retaliation claims

alleged against all defendants were to be dismissed as well. ECF No. 40.  Plaintiff and Rutgers[2]

subsequently stipulated and agreed that Plaintiff would withdraw asserted claims for any type of

emotional distress and Rutgers would not seek any discovery related to Plaintiff's physical, mental,

or emotional condition in connection with any allegations of emotional distress. ECF No. 65.

       4.       Rutgers filed a motion for summary judgment on November 22, 2019. ECF No. 84.

       5.       Rutgers argues in its motion for summary judgment that Plaintiff's claims must fail

as a matter of law because she was a weak candidate for the Residency Program, that she cannot

show that Rutgers' reasons for choosing other candidates for its program were a pretext for

discrimination, and because Rutgers has no control over the Match Program which places

candidates at different residency programs through the use of a centralized selection process based

on algorithms. ECF No. 85 at 1–2.[3]  The Residency Program is very selective and only accepts a

handful of applicants each year through the Match Program out of roughly 1,000 applicants. Id. at

3.   In rare instances, Rutgers offers "out-of-match" programs where they directly select a

candidate. Id.  Such an instance occurred in May 2016 when additional funding became available

for an additional position in the Residency Program. Id.  In arguing that Plaintiffs' claims must fail

with respect to her rejections from the Residency Program, Rutgers compares the qualifications of

applicants who received interviews or positions with the qualifications of Plaintiff and argues that

based on exam scores, letters of recommendation, publications, personal statements, and other

factors, Plaintiff was objectively less qualified for the Residency Program. Id at 9–10, 12–14.

---

[2] The motion for summary judgment clarified that, due to the New Jersey Medical and Health
Sciences Education Restructuring Act, Rutgers is the only proper institutional defendant in this
matter. ECF No. 85 at 1 n.1.

[3] Rutgers also argues that Plaintiff has failed to exhaust administrative remedies with respect to
her retaliation claims, but given the parties' stipulated dismissal of Plaintiff's retaliation claims
(ECF No. 40 at 1), the Court need not address that issue at this time.

6. Plaintiff's briefs in opposition focus on comparing her qualifications for the Residency Program with the qualifications of other candidates who received positions at Rutgers. *See* ECF No. 88 at 2, ECF No. 96 at 3. Plaintiff engages in her own review of the others applicants' qualifications and concludes that she was more than qualified for the Residency Program. ECF No. 96 at 2. Plaintiff also attempts to highlight technical issues with the other applicants' materials, such as an incorrect date and lack of a working visa. Id at 2–3. Plaintiff concludes that "we do not need anything further to see all of [the] pretextual figures, all pseudo justifications that Defendant abundantly joggles [sic] with, to explain hostility, reluctance, ageism, complexes towards Plaintiff's unique above archetype personal and professional qualities, stigmatizing Plaintiff." Id. at 4.

7. Rutgers responds that Plaintiff's subjective opinion of her qualifications and other applicants' qualifications is not enough to survive summary judgment, and that Plaintiff fails to explain how she can show causation with respect to the Match Program placement into the Residency Program. *See* ECF No. 94 at 2–3.

8. Pursuant to Federal Rule of Civil Procedure 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment, a district court must "view the underlying facts and all reasonable inferences therefrom

in the light most favorable to the party opposing the motion," (*id*.), but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

9.      Even construing all disputed facts in a light favorable to Plaintiff, the Court finds that summary judgment in favor of Rutgers is appropriate in this matter.  The Complaint faces two legal arguments from which it cannot survive.  First, Plaintiff's evaluation of her application's merits versus the applications of other prospective residents misses the point, especially given the deference that the Court must show to schools of higher education when selecting their applicants. Plaintiff's dissatisfaction with Rutgers' evaluation process does not come close to showing discriminatory pretext or animus towards Plaintiff on the basis of her national origin, religion,[4]

---

[4] Plaintiff alleges in the Complaint that "I was asked about my religion by Wajid Hussain, MD." ECF No. 1 at 7.  Even assuming that Plaintiff is a member of a protected class based on her religion (she describes herself as "non-islamic" (ECF No. 1-1 at 11)), this allegation is not enough to support a religious discrimination claim under Title VII, as she has not shown disparate treatment. *See Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 281–82 (3d Cir. 2001) ("To prove a claim under the 'disparate treatment' theory . . . [t]he plaintiff

age, or disabilities, and thus her claims must fail.  Second, Plaintiff has not sufficiently disputed Rutgers' argument that her failure to receive a position in the Residency Program through matching cannot be attributed to Rutgers because they do not control the Matching Program or have any input into its algorithmic matching process.  The Court will address these points more fully below.

10.    All of Plaintiff's claims related to her inability to enter the Residency Program through the Matching Program or other avenues fail because she has not shown that she was qualified for Rutgers' Residency Program (ECF No. 85 at 4–7), and even if Plaintiff had made such a showing, she has not shown any discriminatory intent motivated Rutgers' decision not to place her in its Residency Program (id. at 7–8).

11.    To allege a *prima facie* claim for failure to hire based on age, national origin, religion, or physical disability under Title VII of the Civil Rights Act of 1964, Plaintiff must show that (1) she belongs to a protected class; (2) she applied to, and was qualified for a position that was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of her qualifications. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Plaintiff proves her *prima facie* case, then Rutgers must articulate a legitimate, non-discriminatory reason for its action. *Id.* The burden then shifts back to Plaintiff to establish "by a preponderance of the evidence that the reason articulated by the employer was merely a pretext for discrimination and not the true reason for the employment decision." *Mercado v. Wells Fargo*, No. 15-4086, 2017

---

must demonstrate that she (1) is a member of a protected class, (2) was qualified and rejected for the position she sought, and (3) nonmembers of the protected class were treated more favorably."); *see also* ECF No. 85 at 14 n.2 ("Plaintiff has failed to provide any evidence and has essentially guessed as to the successful candidates' religion, national origin, and potential disabilities.  Nonetheless, a review of the NJMS' website demonstrates the diversity of the successful candidates in [the] Residency Program.").

WL 4862417, at *2 (D.N.J. Oct. 27, 2017) (citation omitted).

12.      Rutgers argues that Plaintiff was not qualified as her "application was full of serious red flags. Plaintiff initially failed her Medical Board Step One Test (by a substantial margin) and Step Two Clinical Skills exams, she had little U.S clinical experience . . . [and] her letters of recommendation were tepid and scarce in detail and several of them were outside the field of psychiatry." ECF No. 85 at 14.  Plaintiff responds by comparing her qualifications to other successful applicants' qualifications (*see* ECF No. 88 at 2–3).  The Court finds that Plaintiff has not shown that she was qualified for the Residency Program, as Plaintiff was rejected from numerous other residency programs and compares unfavorably to the other candidates in terms of test scores, letters of recommendation, and publications.  The record shows, for instance, that "[i]n 2015, Plaintiff applied to fifty (50) residency programs and received only one interview.  Plaintiff believes she received an interview with a community hospital in New York but testified that she wasn't certain." ECF No. 85-1 at 3.  In contrast, other candidates appear to have been better qualified for the Residency Program. *See* id. at 14 ("F.F.'s graduation from Allama Iqbal Medical College was prestigious as Allama Iqbal is considered one of the best medical schools in Pakistan. Similarly, B.B. having obtained a Master of Public Health Administration from Harvard in 2014 was considered impressive and D.D.'s exam scores were exceptional. Moreover, looking at their qualifications as a totality, none of the candidates had critical deficiencies in their applications the way that Plaintiff did.").  Plaintiff's allegations are especially weak given she was seeking a medical position at an educational facility, and the Third Circuit has cautioned courts to generally defer to selection decisions made by educational and medical specialists. *See Hankins v. Temple University*, 829 F.2d 437, 443 (3d Cir. 1987) ("University faculties . . . must have the widest discretion in making judgments as to the academic performance of their students"); *see also Kalick v. United States*, 35 F. Supp. 3d 639, 646–47 (D.N.J. 2014) ("Further, the Supreme Court has

recognized the substantial discretion of school authorities in state-operated universities over academic decisions regarding the completion of program requirements.").

13.       Even if Plaintiff had shown that she was qualified for the Residency Program, Rutgers has offered legitimate, non-discriminatory reasons for rejecting her application such as Plaintiff's lesser letters of recommendation from outside of the psychiatry field, and Plaintiff's weak writing sample which did not indicate an interest in psychiatry. ECF No. 85 at 10. Additionally, Plaintiff has not offered any evidence that Rutgers was motivated by discriminatory intent in denying her admission to the Residency Program, and her focus on other candidates' qualifications is misplaced as it does nothing to indicate Rutgers discriminated against her. Moreover, Plaintiff's contention that she was told she was an "old graduate" while at a conference on Transgender Health by Dr. Ozenci, a participant in the Residency Program, is likewise without merit as Dr. Ozenci played no role in the hiring process. ECF No. 1 at 7.  These allegations are not linked to her denial from the Residency Program in any way and are not enough to meet Plaintiff's burden as she admitted that Dr. Ozenci was not part of Rutgers' hiring process. ECF No. 85 at 19 ("I can say that [Dr. Ozenci] did not have any influence – I mean, she was not a hiring decision maker."); *see also Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) ("The plaintiff must prove . . . that the illegitimate factor was a determinative factor in the adverse employment decision, that is, that but for the protected characteristic, the plaintiff would have been hired.").  Accordingly, Plaintiff's Title VII claim fails as a matter of law as she has failed to show she was qualified for the Residency Program, Rutgers has provided legitimate, non-discriminatory reasons for rejecting Plaintiff's application, and Plaintiff has not shown that these reasons were a pretext for discrimination.

14.       Plaintiffs' ADEA claim similarly fails as a matter of law.  In order to state a claim under the ADEA, a plaintiff must demonstrate that: she is at least 40 years old, she suffered an

adverse employment decision, she is qualified for the position, and the employer instead hired an employee who is sufficiently younger to permit an inference of age discrimination. *Novak v. Posten Taxi Inc.*, 386 F. App'x 276, 278 (3d Cir. 2010).  While Plaintiff has alleged that she was over 40 years old when she applied to the Residency Program, as discussed above, she has not shown that she was qualified for the Residency Program in light of her rejection from numerous other programs, her initial failure on entrance exams, and her comparatively unenthusiastic and generalized letters of recommendation.  Plaintiff has also failed to show that there was any discriminatory animus involved in Rutgers' decision to reject her application, and therefore this claim also fails as a matter of law. *See id.* at 278 ("Furthermore, assuming, arguendo, that he could establish a prima facie case, [plaintiff] failed to cast sufficient doubt on [defendant's] legitimate, non-discriminatory reason for his termination. . . .  Because he presented no direct evidence of discrimination or evidence sufficient to establish a prima facie case, summary judgment [on his ADEA claim] was appropriate.").

15.   Rutgers is also entitled to summary judgment on Plaintiff's ADA claim.  To prevail on an ADA discrimination claim, Plaintiff must show that she is a disabled person as defined by the ADA, she is otherwise qualified to perform the essential functions of the position with or without reasonable accommodations, and that she has suffered an adverse employment decision due to discrimination. *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).  Once again, this claim must fail as a matter of law because the record before the Court shows that Plaintiff was not qualified for the Residency Program and there is no showing that she suffered an adverse employment decision based on her claimed disabilities of post-traumatic spine arthritis, linguicism, or complicated grief stemming from her experiences during airstrikes in Belgrade or her immigration from the former Yugoslavia. *See Carter v. N.J. Dep't of Human Servs.*, No. 18-12469, 2020 WL 3427986, at *4 (D.N.J. June 23, 2020) ("Because Plaintiff does not adequately

9

establish any of the essential elements required for a prima facie case of disability discrimination under the ADA, Plaintiff's ADA claim suffers from an insufficient evidentiary basis on which a reasonable jury could find for Plaintiff. . . . Therefore, his ADA claim is dismissed.")

16.   Finally, Plaintiff's NJLAD claim fails for substantially the same reasons stated above as courts look to federal law for guidance when analyzing NJLAD claims. *Smith v. M&M Mgmt. Co.*, No. 17-7978, 2019 WL 1397401, at \*6 (D.N.J. Mar. 28, 2019) ("It is well settled that state and federal courts interpreting the NJLAD look to federal law for guidance, specifically Title VII of the Civil Rights Act and the Age Discrimination in Employment Act of 1967."). "To establish a prima facie case of disability discrimination, the plaintiff must show that: (1) she was handicapped or disabled within the meaning of the NJLAD; (2) she was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) she suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position." *Sanders v. Div. of Children & Family Servs.*, No. A-3720-14T2, 2017 WL 3160609, at \*8 (N.J. Super. Ct. App. Div. July 26, 2017).   The record before the Court shows that Plaintiff was not qualified for the Residency Program and did not suffer an adverse employment decision because of her disabilities.  Rutgers is therefore entitled to summary judgment on this claim as well.

17.   Plaintiff's discrimination claims with respect to the Matching Program face an additional fatal obstacle in that Rutgers does not control placement through the Residency Program.  Plaintiff provides no explanation of how the Matching Program works or how Rutgers exercised control over the Matching Program.  As such, the Court relies on Rutgers' description of the system.  Rutgers explains that:

> "The NRMP or 'The Match,' places medical school students into residency training programs located in United States teaching hospitals. After candidates apply to programs, programs review applications and invite selected candidates for interviews held between October and February. After the interview period is over, programs and applicants each

compile 'rank order lists' that they submit to the 'The Match.' Programs list candidates, ranked in order from most to least preferred, who they wish to train. Similarly, candidates rank programs where they wish to train. The actual placement decision is made by algorithm. All applicants and participating residency programs are generally bound by the results of the Match. Just because an applicant ranks a program a certain way and a program ranks an applicant a certain way does not necessarily mean that they will match pursuant to the algorithm. Therefore, because [Rutgers] is a participant in the 'Match' program it does not control the placement process for its Residency positions during the Main Residency Match period." ECF No. 85-1 at 2–3 (citations omitted).

18. Other Courts have rejected similar claims of discrimination brought against residency programs that participate in the Matching Program, recognizing that institutions do not have direct control over who matches and obtains placement in their residency programs. *See Hui Li v. Univ. of Fla. Bd. of Tr.*, No. 14-236, 2015 WL 1781578, at *9 (N.D. Fla. Apr. 20, 2015) ("Li's complaint does not allege sufficient factual content to plausibly show that the admissions committee, which only had the indirect ability to control which candidates 'matched' - ,i.e., were admitted to the program - acted to ensure that Li was rejected by the Matching Program."); *see also Nat'l Resident Matching Program v. Alashry*, No. 17-2557, 2018 WL 4760358, at *1 (D.D.C. Sept. 27, 2018) (citations and quotation marks omitted) ("From mid-January to late February of each year, applicants submit their rank order lists of preferred programs to NRMP, and program directors rank applicants in order of preference for training. NRMP then "uses a computerized mathematical algorithm to match applicants with programs using the preferences expressed on their rank lists.").

19. Here, because the facts in the record demonstrate that Rutgers did not control the placement of Plaintiff through the Matching Program, Rutgers is entitled to summary judgment on all of Plaintiff's Matching Program discrimination claims for the additional reason that she cannot show the requisite causation between her protected status and her rejection. *See* ECF No. 85-1 at 3 ("Therefore, because [Rutgers] is a participant in the 'Match' program it does not control the placement process for its Residency positions during the Main Residency Match period.").

11

Rutgers is entitled to summary judgment on Plaintiff's discrimination claims related to the

Matching Program as Rutgers did not have control over the decision to match Plaintiff with their

Residency Program, meaning Plaintiff cannot establish the requisite causation for these claims.

*See Hui Li*, 2015 WL 1781578, at *9 (dismissing claims for failure to show university had control

over residency placement through Matching Program); *see also Sarullo v. U.S. Postal Serv.*, 352

F.3d 789, 798 (3d Cir. 2003) ("[T]o establish a claim of discrimination, [s]he must establish some

causal nexus between h[er] membership in a protected class and the decision to not rehire h[er].").

    **Accordingly, IT IS** on this 30th  day of September, 2020,

    **ORDERED** that Rutgers' motion for summary judgment (ECF No. 84) is **GRANTED**;
and it is further

    **ORDERED** that the Clerk of the Court shall mark this matter **CLOSED**; and it is finally

    **ORDERED** that the Clerk of the Court shall deliver a copy of this Opinion and Order to
Plaintiff by regular U.S. mail.

    **SO ORDERED.**

                                                          **CLAIRE C. CECCHI, U.S.D.J.**